**In the United States District Court**
**For the Northern District of Texas**
**Fort Worth Division**

| | |
|---|---|
| **Darla Strange and Tim Strange,** **Individually and as Next Friend of CS, a** **minor; Tisha Zuniga, Individually and as** **Next Friend of AZ, a minor; and Michelle** **Miller, Individually and as Next Friend of** **KM, a minor** **Vs.** **Mansfield Independent School District and** **Kelly Dan Williams, Jr., Individually, and as** **an Employee of Mansfield Independent** **School District** | § § § § § § § § § § § § § **Civil Action No.** |

**Plaintiffs' Original Complaint and Jury Demand**

<u>**Introduction**</u>

1. This is a sexual assault and molestation action for money damages brought by Darla Strange and Tim Strange, Individually and as Next Friend of CS, a minor; Tisha Zuniga, Individually and as Next Friend of AZ, a minor; and Michelle Miller, Individually and as Next Friend of KM, a minor, arising from violations of their federal civil rights committed by the named defendants.

<u>**Applicable Law and Policy**</u>

2. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that

> "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

3.  Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106.

4.  34 C.F.R. § 106.8(b) provides:

    ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

5.  In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

6.  The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## **Parties**

7.  Plaintiffs, Darla Strange and Tim Strange, Individually and as Next Friend of CS, a minor, reside in Kaufman County, Texas.

8.  Plaintiff, Tisha Zuniga, Individually and as Next Friend of AZ, a minor, resides in Sacramento County, California.

9.  Plaintiff, Michelle Miller, Individually and as Next Friend of KM, a minor, resides in Mansfield County, Texas.

10. Defendant Kelly Dan Williams, Jr. (hereinafter "Defendant Williams"), is currently incarcerated in federal prison. At all times material to this suit, he was employed as an educator by Mansfield Independent School District. Each of the acts complained of arise

from the conduct of Williams while acting under the color of state law, and was committed within the scope of his employment with the Mansfield Independent School District. Defendant Williams is sued in his individual and official capacities, and can be served with process at Kelly Dan Williams/Register Number 49667-177, USP Tucson, U.S. Penitentiary, P.O. Box 24550, Tucson, AZ 85734.

11. Defendant Mansfield Independent School District (hereinafter "Defendant MISD"), is political subdivision of Tarrant County, Texas. Defendant MISD is responsible for the policies, practices, and customs of its school district, as well as the hiring, training, supervision, control and discipline of its teachers and principals. Defendant MISD, was the employer of the person named herein as an individual defendant. Defendant MISD can be served with process at 605 East Broad Street, Mansfield, Texas 76063.

## Jurisdiction and Venue

12. Pursuant to 28 U.S.C. § 1331, the court has original, federal question jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims against defendants. The Court has supplemental jurisdiction over the state law claims in this suit pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the federal claims in that all of such federal and state claims form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and more specifically, in this division.

## Factual Background

### Williams's History of Inappropriate Behavior with Student at Previous Job
### at Cedar Hills ISD

14. Defendant Williams was hired by Mansfield ISD in 2010 as a teacher in its Functional Academics Life Skills (FALS) program. Defendant Mansfield ISD describes the FALS program in the following manner: "FALS is a centralized self-contained life skills program designed for students who demonstrate significant cognitive disabilities and require an alternate curriculum."

15. Mansfield ISD Police Department investigative records indicate that before being hired by Mansfield ISD, Defendant Williams had been reported to Cedar Hill ISD administrators numerous times by a parent of a student with special needs for unusual behavior including spending excessive time alone with the student, refusing to turn on the cameras in his camera-equipped classroom, and being caught alone doing the student's hair. The subject student was a 3rd grader at the time of the complaints to Cedar Hill ISD.

16. Defendant Williams ended all communications with the parent of the 3rd grade special needs student when the student's parent refused his attempt to take the special needs student for a "ride in his sports car".

17. Defendant Williams is believed to have resigned from employment with Cedar Hill ISD.

### Williams's Inappropriate Behavior with Mansfield ISD Student While Working as a Substitute Teacher in 2009

18. Before Mansfield ISD hired him as a teacher in August of 2010, Defendant Williams worked as a substitute teacher at various Mansfield ISD schools. And during the 2009 - 2010 school year, Mansfield ISD administrators were contacted by concerned parents of an unnamed victim (hereinafter referred to as "Victim Doe") about Defendant Williams's behavior while working as a substitute teacher at Cross Timbers Intermediate School. Victim Doe was also a part of Mansfield ISD's FALS program.

19. Defendant Williams often brought Victim Doe to Special Olympics basketball practice at the historic Rock Gym, a facility that is owned by Mansfield ISD. Victim Doe's parents became alarmed when Defendant Williams took too long helping Victim Doe in the restroom at Special Olympics basketball practice at Mansfield ISD's historic Rock Gym. Victim Doe's mother reports that when Defendant Williams exited the restroom with Victim Doe, he jumped and seemed startled to find Doe's mother standing outside the door. Victim Doe's mother then went to Cross Timbers Intermediate School and spoke with Principal Gerald Kokenes. She expressed her concerns to Principal Kokenes and told him that she never wanted Defendant Williams around Victim Doe again.

20. On June 9, 2010, then Cross Timbers Intermediate School Principal, Gerald Kokenes sent an email to Mansfield ISD Director of Human Resource Development, Venetia Sneed regarding Victim Doe's mother's complaints about Williams. Specifically, the email states that Defendant Williams had become closely attached to the special needs student and had been to the student's home to help care for the student. The email also

states that the family had become uncomfortable with the situation and requested that Defendant Williams not be allowed to work as a substitute teacher at three Mansfield ISD schools.

21. Williams was hired, full-time as a teacher for Mansfield ISD two months later.

22. Over 5 years later, the investigation of the 2015 incident at Mary Orr Intermediate School revealed that Defendant Williams possessed pictures and video recordings of himself engaged with lewd sexual acts with Victim Doe at Mansfield ISD's historic Rock Gym. The pictures and videos were taken in February, April and May of 2010, during the period Defendant Williams worked at Cross Timbers Intermediate School in Mansfield ISD.

23. Victim Doe is not a party to this lawsuit.

### Williams  Molests 11 Year Old Special Needs Student at Mansfield ISD School During 2010-2011 School Year

24. Defendant Mansfield ISD assigned Defendant Williams to work at Della Icenhower Intermediate School during the 2010 - 2011 school year.

25. Plaintiff AZ, an autistic and completely nonverbal 11 year old boy at the time, attended Della Icenhower Intermediate School and was a part of the FALS program.

26. The investigation of Defendant Williams's 2015 molestation of Plaintiff CS at Defendant Mansfield ISD's Mary Orr Intermediate School revealed that Defendant Williams's

personal laptop contained images of Plaintiff AZ changing clothes and "on the toilet exhibiting his penis in a lewd manner".

### Williams's Molestation of 11 Year Old Special Needs Student During 2014-2015 School Year

27. Defendant Mansfield ISD assigned Defendant Williams to work at Mary Orr Intermediate School during the 2014-2015 school year.

28. Plaintiff CS and Plaintiff KM, both 11 year old autistic boys, were students in Defendant Williams's class at Defendant Mansfield ISD's Mary Orr Intermediate School and were a part of the FALS program.

29. The investigation of Defendant Williams's 2015 molestation of Plaintiff CS at Defendant Mansfield ISD's Mary Orr Intermediate School revealed that Defendant Williams sexually assaulted Plaintiff KM in the Mary Orr Intermediate School bathroom.

30. Specifically, Plaintiff KM, who is autistic, but verbal, told law enforcement officials that Defendant Williams "put his pee pee into my butt. Just half way." Plaintiff KM also said that he told Defendant Williams "no" and that he "tried to kick [Williams] in the crotch, but [Defendant] Williams held me and pinned me down."

31. Immediately following this incident of brutal rape, Plaintiff KM ran to the office of Defendant Mansfield ISD's employee Duane Thurston and reported the incident. Duane Thurston was the principal of Mary Intermediate School at all times relevant to Plaintiff KM's claims.

32. Because Defendant Williams was no longer the FALS teacher at Mary Orr Intermediate School after being caught in the act molesting Plaintiff CS, the incident involving Plaintiff KM and his reporting of the incident to the Mansfield ISD employee Principal Duane Thurston's office occurred before June 1, 2015 incident involving Plaintiff CS.

### Williams Caught Performing Oral Sex on 11 Year Old Student at Mary Orr Intermediate School

33. On June 1, 2015, Defendant Williams was caught in the act performing oral sex on Plaintiff CS, an 11 year old autistic boy, with very limited verbal capabilities, in the handicap stall of a restroom at Mary Orr Intermediate School of Mansfield ISD.

34. Following the incident, and after investigation of Defendant Williams's computers and electronic storage equipment, law enforcement discovered droves of pictures and videos depicting genitalia of young boys and of Defendant Williams engaged in sexual acts with young boys.

35. During the 2014-2015 school year, Defendant Williams was the teacher of the FALS class at Mary Orr Intermediate School which included Plaintiff KM and Plaintiff CS.

36. Following the 2015 incident at Mary Orr, the Mansfield ISD police department investigation revealed Defendant Williams had committed multiple prior acts of sexual assault against students in Mansfield ISD's FALS program.

37. Plaintiff CS, Plaintiff KM and Plaintiff AZ were all diagnosed with varying degrees of Autism Spectrum Disorder before this incident. All now suffer from nightmares, have regressed in their performance in school, and have exhibited hypersexual behaviors

including evidence of mental trauma, depression, personal injuries, and emotional and physical manifestations of mental anguish.

### Mansfield ISD Employees Were Not Trained to Report Williams's Inappropriate Behavior with Special Needs Students

38. Multiple employees of Defendant Mansfield ISD noticed Defendant Williams's unusual behavior throughout his tenure employment with Mansfield ISD.

39. Defendant Mansfield ISD employee Lorena Alvarenga caught Defendant Williams in the act of sexually assaulting Plaintiff CS on June 1, 2015. In her statement to law enforcement, Alvarenga noted that since at least two weeks before June 1, 2015 she suspected that Defendant Williams was "doing something wrong" in the bathroom with Plaintiff CS. Alvarenga had noticed that Defendant Williams was "spending too much time in the restroom" with Plaintiff CS two weeks before the June 1, 2015 incident at Mary Orr Intermediate School. On one instance she walked in on Defendant Williams in the restroom with Plaintiff CS. Alvarenga looked under the stalls and saw Defendant Williams leaning against the wall and facing Plaintiff CS. Alvarenga knew that Defendant Williams and Plaintiff CS were facing each other "because of how their feet were facing each other". Two weeks later Alvarenga walked in on Defendant Williams performing oral sex on Plaintiff CS in the same handicap bathroom stall.

40. Defendant Mansfield ISD employee Patricia Talley worked as a paraprofessional at Mary Orr Intermediate School for two years with Defendant Williams. During her time at Mary Orr, she noticed that Defendant Williams would allow Plaintiff CS to come behind his desk and would "play with his hair". Talley also noticed that Defendant

Williams "took a lot longer" when taking Plaintiff CS and one other special needs student to the restroom.

41. Defendant Mansfield ISD employee DeRhonda Waller is a nurse assigned to assist a special needs female at Mary Orr Intermediate School. Waller noted that she thought it was unusual that Plaintiff CS would always touch and hug on Defendant Williams at school. Waller also noticed that the other special needs child that Defendant Williams would take to the restroom with Plaintiff CS would "come back to class upset and aggravated so he would act out by screaming and crying". Waller also noticed that this student would not act this way when Talley took him to the restroom.

## Claims for Relief

**42 U.S.C. § 1983**

42. The allegations contained in paragraphs 13 through 41 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

43. Under the Fourteenth Amendment, Plaintiffs had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

44. Defendant Williams and Defendant Mansfield ISD employees Kokenes, Sneed, Thurston, Alvarenga, Talley, and Waller were all state actors acting under the color of state law at all times relevant.

45. Defendants each subjected Plaintiffs to violations of their rights to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate Defendant Williams misconduct; failing to appropriately discipline Defendant Williams; failing to adequately train and supervise Mansfield employees Kokenes, Sneed, Thurston,

Alvarenga, Talley, and Waller; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiffs by Defendant Williams.

46. Defendant Mansfield ISD has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against Mansfield ISD students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise Mansfield ISD employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

47. On information and belief, Defendant Mansfield ISD has followed these unconstitutional customs and policies not only with regard to Plaintiffs but also with regard to criminal and tortious misconduct committed against other Mansfield ISD students.

48. Mansfield ISD's policies and/or practices constituted disparate treatment of males and had a disparate impact on male students.

49. Defendant Williams and Mansfield employees Kokenes, Sneed, and Thurston are or were at the time of events complained of within, policymakers for the purpose of implementing the Mansfield ISD's unconstitutional policies or customs.

50. Plaintiffs have suffered emotional distress and psychological damage, and their character and standing in their community have suffered from the harassment fostered as a direct and proximate result of Defendant Mansfield ISD's deliberate indifference to their rights under the Fourteenth Amendment.

51. Mansfield ISD employees Kokenes, Sneed, and Thurston were "state actors" working for Mansfield ISD, a federally funded school system.

52. Mansfield ISD employees Kokenes, Sneed, and Thurston acted under "color of law" when refusing to respond to Plaintiffs' sexual assault on school premises.

53. Mansfield ISD employees Kokenes, Sneed, and Thurston failed to preserve Plaintiffs' constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

54. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs had the right to equal access to an educational environment free from harassment and discrimination.

55. Mansfield ISD employees Kokenes, Sneed, and Thurston should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

56. Mansfield ISD employees Kokenes, Sneed, and Thurston each violated Plaintiffs' rights to equal access by:

   a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

   b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

   c. Failing to take steps to protect the Plaintiffs as necessary, including interim steps taken prior to the final outcome of the investigation;

   d. Failing to provide a grievance procedure for non-verbal students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights; and

   e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures.

57. Defendant Mansfield ISD violated Plaintiffs' Fourteenth Amendment rights to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

58. These policies and/or practices constituted disparate treatment of males and had a disparate impact on male students.

59. Defendants' actions and lack of actions were the proximate cause of Plaintiffs' emotional distress and psychological damage, and their character and standing in their community have suffered from the harassment fostered as a result of Defendant Mansfield ISD's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

**Title IX**

60. The allegations contained in paragraphs 13 through 41 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

61. The sex-based harassment articulated above in paragraphs 13 through 41 was so severe, pervasive, and objectively offensive that it deprived Plaintiffs of access to educational opportunities or benefits provided by the school.

62. Defendant Mansfield ISD created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

    a.   Plaintiffs were members of a protected class;

    b.   they were subjected to sexual harassment in the form of a sexual assault by their teacher;

    c.   they were subjected to harassment based on their sex; and

d.  they were subjected to a hostile educational environment created by the Defendant Mansfield ISD's lack of policies and procedures and failure to properly investigate and/or address the sexual assaults and subsequent harassment.

63. Defendant Mansfield ISD and its officials had actual knowledge of the sexual assault and the resulting harassment of Plaintiffs created by its failure to investigate and discipline Plaintiffs' attacker in a timely manner and consistent with its own policy and federal and state law on multiple occasions.

64. The Defendant Mansfield ISD's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiffs, on the basis of their sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant Mansfield ISD's education program in violation of Title IX.

65. Defendant Mansfield ISD failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiffs.

66. Defendant Mansfield ISD persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Victim Doe and Plaintiff KM.

67. Defendant Mansfield ISD engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

68. This policy and/or practice constituted disparate treatment of males and had a disparate impact on male students.

69. Plaintiffs have suffered emotional distress and psychological damage, and their character and standing in their community have suffered from the harassment fostered as a direct and proximate result of Defendant Mansfield ISD's deliberate indifference to their rights under Title IX.

**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.***

70. The allegations contained in paragraphs 13 through 41 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

71. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."29 U.S.C. § 794(a).

72. The regulations implementing the Rehabilitation Act provide that a recipient of federal funds that operates as a secondary education program or activity "shall provide a free and appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

73. A public entity is required to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

74. Plaintiff AZ is  is an "individual with a disability," as such is defined in 29 U.S.C. § 705(20), in that he has autism, which substantially limits one or more major life activities.

75. Plaintiff KM is an "individual with a disability," as such is defined in 29 U.S.C. § 705(20), in that he has autism, which substantially limits one or more major life activities.

76. Plaintiff CS is an "individual with a disability," as such is defined in 29 U.S.C. § 705(20), in that he has autism, which substantially limits one or more major life activities.

77. Defendant MISD is a recipient of federal financial assistance.

78. Defendant MISD has violated Section 504 and its regulations by discriminating against Plaintiff AZ, Plaintiff KM, and Plaintiff CS solely by reason of their disabilities by excluding them from and denying them participation in a federally funded program.

79. Defendant MISD has refused to modify its policies, practices, or procedures, thereby intentionally discriminating on the basis of their disability.

80. As a direct result of the Defendants' actions, Plaintiff AZ, Plaintiff KM, and Plaintiff CS were deprived of public educational services offered to children without disabilities. Plaintiff AZ, Plaintiff KM, and Plaintiff CS suffered irreparable harm due to the deliberate, intentional, wanton, willful, and outrageous discriminatory actions of the Defendants.

81. Defendants' unlawful actions were taken in bad faith and/or with deliberate indifference by departing substantially from accepted professional judgment, practice, or standards as to demonstrate that the person(s) responsible did not base the decision on such a judgment.

82. As a direct result of the Defendants' actions, the Plaintiff AZ, Plaintiff KM, and Plaintiff CS have suffered harassment, intimidation, assault, embarrassment, humiliation,

emotional distress, and other injuries and have incurred actual damages in an undetermined amount.

**Assault and Battery**

83. The allegations contained in paragraphs 13 through 41 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

84. As a pendent state cause of action, at all times material and relevant herein, Defendant Williams, by acts and/or omissions and under color of state law did then and there by acts and/or omissions, intentionally, knowingly and/or recklessly cause severe personal injury to Plaintiffs through unconsented physical contact with Plaintiffs.

85. Under Texas law, the cause of action for offensive sexual conduct is simply one for assault and battery. Consequently, Plaintiffs alleges that Defendant Williams committed an assault and battery upon Plaintiffs.  Said conduct of Defendant Williams was committed intentionally, knowingly, and/or recklessly and was the proximate cause of the personal injuries and emotional injuries to Plaintiffs. Said injuries were the direct and immediate consequences of Defendant Williams's wrongful acts, and a natural and direct result of the assault and battery.

86. Defendant Williams committed an assault and battery upon Plaintiffs by intentionally and/or knowingly causing physical sexual contact with Plaintiffs. Defendant Williams knew or should have reasonably believed that Plaintiffs would regard the contact as offensive and/or provocative. Defendant Williams knew or should have known that the acts, as previously described, were provocative, harmful, and/or offensive to Plaintiffs. Said acts of Defendant Williams were committed intentionally, knowingly, and/or

recklessly, and they were the proximate cause of bodily and emotional injuries to Plaintiffs. Furthermore, said injuries were the direct and immediate consequences of Defendant Williams's tortious acts and a natural and direct result of the sexual conduct.

87. At no time was Defendant Williams privileged to take the action described herein as necessary. Moreover, Defendant Williams assault and battery of Plaintiffs were not objectively reasonable.

**Intentional Infliction of Emotional Distress**

88. The allegations contained in paragraphs 13 through 41 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

89. Plaintiffs assert that the acts and/or omissions of Defendant Williams render him liable for intentional infliction of emotional distress.

90. In the sexual assault of Plaintiffs, Defendant Williams acted intentionally and/or recklessly, and his conduct was so outrageous in character and extreme in degree that it went beyond all possible bounds of decency. Defendant Williams's actions constituted outrageous conduct because he knowingly abused his position of authority as a teacher and knew that Plaintiffs were particularly susceptible to emotional distress because they were minors at the time. Such conduct by Defendant Williams proximately caused Plaintiffs' emotional distress, which was severe, as the acts caused them embarrassment, fright, horror, grief, shame, humiliation, and worry.

**<u>Damages</u>**

91. As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiffs have been caused to suffer general damages that include, but are not limited to, the following: physical pain and mental anguish in the past and future; pain and suffering in the past and future; and severe emotional and mental distress in the past and future.

92. Pursuant to 42 U.S.C. § 1988, a prevailing party in a § 1983 and a § 1985 case is entitled to recover its attorney's fees and expert fees. Hence, Plaintiffs further pray for all costs, attorney's fees, and expert fees associated with bringing the present case to trial.

93. In addition, Plaintiffs pray for punitive damages. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under §1983 when the Defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. As such, Plaintiffs are entitled to punitive damages from Defendants.

94. The incidents occurred because of acts or omissions that constitute negligence, negligence per se, and/or malice on the part of Defendants, and that proximately caused the injuries and damages which exceed the minimum jurisdictional limits of this Court and include reasonable and necessary medical expenses, impairment, pain, suffering, and mental anguish, all occurring in the past and into the future.

95. Plaintiffs assert that all conditions precedent to filing suit have occurred.

96. Plaintiffs demand a trial by jury for which the fee is separately tendered. Further, Plaintiffs request Defendants respond to Requests for Disclosure, pursuant to the FRCP.

Plaintiffs request compensatory damages against Defendants, jointly and severally; that Plaintiffs also recover punitive damages against each Defendant in an amount to punish and/or deter similar future conduct; and that Plaintiffs recover against each Defendant all reasonable and necessary court costs, attorney's fees, and expert fees in regards to this suit. Further, Plaintiffs pray for all pre-judgment and post-judgment interest at the highest rate allowed by law that can be assessed against

Plaintiffs pray for any and all further relief, to which they may show themselves to be entitled.

Respectfully submitted,

**VB Attorneys**

*/s/ Byron C. Alfred*

_____

**Byron C. Alfred**
SBN: 24084507
**Brian Beckcom**
SBN: 24012268
**Kenneth Fenelon**
SBN: 24059741
6363 Woodway Dr., Suite 400
Houston, Texas 77057
Office: (713) 224-7800
Facsimile: (713) 224-7801
Email: Byron@vbattorneys.com
        Brian@vbattorneys.com
        Kenneth@vbattorneys.com
**Attorneys for Plaintiffs**