**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DARLA STRANGE** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00101-O** |
| | § | |
| **MANSFIELD INDEPENDENT** | § | |
| **SCHOOL DISTRICT and** | § | |
| **KELLY DAN WILLIAMS, JR.** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is "Defendant Mansfield Independent School District's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support" (ECF No. 25), filed April 24, 2018; Plaintiffs' Response to Defendant Mansfield Independent School District's Motion to Dismiss and Brief in Support (ECF No. 28), filed May 14, 2018; and "Defendant's Reply Brief on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 30), filed May 25, 2018. On May 7, 2018, United States District Judge Reed C. O'Connor referred the Motion and all related filings to the undersigned for hearing, if necessary, and determination or recommendation. ECF No. 26.

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** in part and **DENY** in part Defendant Mansfield Independent School District's Motion to Dismiss Plaintiffs' Amended Complaint and Brief in Support (ECF No. 25). The undersigned recommends that Plaintiffs' claims against Defendant Mansfield Independent School District under Section 504 and 42 U.S.C. § 1983 for failure to train and failure to investigate be **DISMISSED without prejudice**, but does not recommend dismissal of Plaintiff's claims under

Title IX or 42 U.S.C. § 1983 for failure to discipline.

## BACKGROUND

This case concerns alleged violations of Title IX, Section 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983 against Defendants Mansfield Independent School District ("MISD") and Kelly Dan Williams ("Williams"), as well as assault and battery against Williams, related to child sexual abuse by Williams while employed as a teacher by MISD. Plaintiffs Darla Strange and Tim Strange, the parents of minor child CS; Tisha Zuniga, the parent of minor child AZ; and Michelle Miller, the parent of minor child KM, bring this action individually and as next friends of their children.

The following alleged facts are taken from Plaintiff's Amended Complaint (ECF No. 21). MISD hired Williams in 2010 to be a teacher in MISD's Functional Academics Life Skills ("FALS") program. ECF No. 21 at ¶ 14. FALS is a program for "students who demonstrate significant cognitive disabilities and require an alternate curriculum." *Id.*

Prior to being hired by MISD, Williams worked at Cedar Hill ISD, where a parent of a third-grade special-needs student reported him to the Cedar Hill administration for spending excessive time and time alone with that student, as well as not turning on surveillance cameras in the classroom. *Id.* at ¶ 15. These reports were in Williams's employment file at Cedar Hill ISD. *Id.* Plaintiffs allege, based on information and belief, and pursuant to MISD policy, that these reports were known to MISD's Board of Trustees when it hired Williams. *Id.* at ¶ 17.

Williams first worked for MISD as a substitute teacher during the 2009–10 school year. *Id.* at ¶ 18. During that school year, the parents of an unnamed student ("John Doe") contacted MISD about Williams's sexual misconduct with their son while Williams worked as a substitute teacher at Cross Timbers Intermediate School. *Id.* John Doe was a participant in MISD's FALS program.

*Id.* John Doe's mother saw Williams and her son exit a restroom together at the Rock Gym, a facility owned by MISD. *Id.* at ¶ 19. John Doe's mother reported the misconduct to Cross Timbers Intermediate School's principal, Gerald Kokenes, and she requested that the school district investigate and take action. *Id.* Kokenes then reported the complaint to the Board of Trustees, directly or indirectly. *Id.* Kokenes also sent an email on June 9, 2010, to the MISD Title IX compliance officer. *Id.* at ¶ 20. However, the email only stated that John Doe's family was uncomfortable with Williams, and did not include any concerns about sexual misconduct. *Id.* MISD responded by changing Williams's duties so that he would not have contact with John Doe. *Id.* at ¶ 21.

MISD hired Williams as a full-time teacher in the FALS program. *Id.* The MISD Board of Trustees allegedly made the ultimate hiring decision, and, according to Plaintiffs' allegations, MISD policy required the Board to conduct a background check that would have revealed Williams's prior misconduct at Cedar Hill ISD. *Id.* Williams had taken pornographic images of John Doe on school property during February, April, and May, 2010, and shared those images over the internet, but Plaintiffs do not allege that MISD was aware of these criminal actions. *Id.* at ¶ 22.

MISD assigned Williams to work at Della Icenhower Intermediate Middle School for the 2010–11 school year. *Id.* at ¶ 24. While on this assignment, Williams took pornographic photographs of Plaintiff AZ, an autistic and completely nonverbal eleven-year-old boy who was part of the FALS program. *Id.* at ¶¶ 25–26. The investigation of Williams's later, 2015 molestation of Plaintiff CS revealed the existence of these photographs. *Id.* at ¶ 26.

MISD assigned Williams to work at Mary Orr Intermediate Middle School for the 2014–15 school year. *Id.* at ¶ 27. Plaintiffs CS and KM, both eleven-year-old autistic boys, were students in Williams's class and part of the FALS program. *Id.* at ¶ 28. At some point during this school

year, before June 1, 2015, Williams sexually assaulted KM in a restroom at Mary Orr Intermediate Middle School. *Id.* at ¶ 29. KM ran to Principal Duane Thurston's office and told Thurston that Williams had sexually assaulted him. *Id.* at ¶ 31. Plaintiffs allege, according to information and belief, and pursuant to MISD policy, that Thurston reported KM's complaint to the MISD Board of Trustees. *Id.*

On June 1, 2015, MISD employee Lorena Alvarenga ("Alvarenga") discovered Williams performing oral sex on CS, an eleven-year-old autistic boy with very limited verbal capabilities, in a restroom at Mary Orr Intermediate Middle School. *Id.* at ¶ 33, 39. In the ensuing investigation, law enforcement personnel found a large number of pornographic images and videos of children, including depictions of Williams engaged in sexual acts with young boys, on Williams's computers and electronic storage hardware. *Id.* at ¶ 34. Law enforcement personnel also discovered that Williams had committed multiple prior acts of sexual assault against students in MISD's FALS program. *Id.* at ¶ 36.

Plaintiffs assert that MISD failed to train its employees how to recognize signs of sexual abuse in children, particularly those with learning disabilities, and predatory behavior in adults. *Id.* at ¶ 36. Two weeks before witnessing Williams abusing CS, Alvarenga saw Williams in a bathroom stall with CS, according to her statement to law enforcement officers. *Id.* at ¶ 39. Another employee of MISD, Patricia Talley ("Talley"), noticed that Williams would allow CS to come behind Williams's desk and play with CS's hair. *Id.* at ¶ 40. Talley also noticed that Williams took longer when taking CS and another student to the restroom. *Id.* A third MISD employee, DeRhonda Waller ("Waller"), said that this other student would come back from the restroom "upset and aggravated so he would act out by screaming and crying." *Id.* at ¶ 41.

4

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits

rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co.*, 313 F.3d at 329; *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"); *Parker v. Allstate Ins. Co*., No. 3:16-CV-00892-CWR-FKB, 2017 WL 4287912, at *1 (S.D. Miss. Sept. 27, 2017) ("It is well-established that plaintiffs who fail to meet their burden on a motion for judgment on the pleadings and yet may still have a viable avenue to recover should be granted leave to amend their complaint and make their best case." (citation omitted)).

## ANALYSIS

MISD moves to dismiss all of Plaintiffs' claims. MISD argues that Plaintiffs' alleged facts in the original complaint contradict those in the amended complaint. MISD also argues that Plaintiffs have insufficiently pleaded their claims against MISD under Title IX, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 1983, and assault and battery.

**I.    MISD's arguments that this Court should read the facts alleged in Plaintiffs' Amended Complaint in the context of the Original Complaint are contrary to the Federal Rules of Civil Procedure.**

"The liberal pleading standards of Rule 8 merely require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ayers v. Bd. of Regents Univ. of Texas Sys*., 557 Fed. App'x 263, 267 (5th Cir. 2014), *abrogated on other grounds by Davoodi v. Austin Indep. Sch. Dist*., 755 F.3d 307 (5th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)). "An amended complaint

supersedes the original complaint and renders it *of no legal effect* unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (emphasis added) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). According to leading commentators:

> Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading. This effect of an amended pleading under Rule 15(a) becomes particularly important when the amendment purports to cure a defective earlier pleading. For example, plaintiff may file a new complaint that does not refer to or adopt any of the deficient allegations in the original pleading; if the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up the weaknesses of the earlier pleading.

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2018).

Throughout its Motion to Dismiss, MISD compares the factual allegations contained in Plaintiffs' Amended Complaint to those found in the Original Complaint. ECF No. 25 at 12–17, 22. MISD argues that the differences between the two complaints show that the factual allegations in the Amended Complaint "defy logic and are simply not plausible." *Id.* at 15. MISD argues that the Court should disregard at least some of the new factual allegations and hold insufficient any new legal theories based on the new allegations. *Id.* at 15, 17.

To the contrary, the Federal Rules of Civil Procedure explicitly allow such an amendment, and the amendment renders an original complaint of no legal effect. Fed. R. Civ. P. 15(a); *King*, 31 F.3d at 346. Plaintiffs can file an amended complaint to cure deficiencies in their prior complaint, and a motion like MISD's that points up the weakness of Plaintiffs' early pleading does not require the Court to dismiss the suit. 6 Wright & Miller, *Federal Practice and Procedure* § 1476. Accordingly, the undersigned will consider only Plaintiffs' Amended Complaint in this recommendation on MISD's Motion to Dismiss.

**II.    Plaintiffs have sufficiently stated a Title IX claim, because they have made factual allegations that two principals employed by MISD had actual notice of Williams's sexual misconduct.**

Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). The Supreme Court has established that Title IX is enforceable through an implied private right of action, and that monetary damages are available in that action. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979); *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992)). A plaintiff cannot recover on a Title IX claim on principles of *respondeat superior* or constructive notice. *Id.* at 285. The defendant must instead have had actual notice of the teacher's misconduct: "[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 277, 290. "[L]iability under Title IX arises not from the discrimination or harassment itself but from "an official decision by the recipient not to remedy the violation." *Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 Fed. App'x 853, 858 (5th Cir. 2017) (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)). The failure to respond "must amount to deliberate indifference to discrimination." *Id.* at 290.

"Though the standards for school district liability under § 1983 for a failure-to-train claim and Title IX differ slightly, both require Plaintiffs to show that either [the school district] or its officials in charge of supervising [the student] acted with deliberate indifference." *Ramos v. Webb Consol. Indep. Sch. Dist.*, 724 Fed. App'x 338, 339 (5th Cir. 2018). The deliberate indifference

standard is a high one. *Id.* at 340. To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. *Id.* "The state actor's conduct 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *Id.* (quoting *James v. Harris Cty.*, 577 F.3d 612, 617–18 (5th Cir. 2009)). "Moreover, even if the state actor has actual knowledge of a substantial risk of harm to the victim, if he responds reasonably to that risk, he will not be held liable even though the harm ultimately occurs. *Id.* (citing *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)). "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis Next Friend LaShonda D.*, 526 U.S. at 649.

MISD argues that Plaintiffs did not plead that it had actual knowledge of misconduct. ECF No. 25 at 12. MISD first cites *P.H. v. School District of Kansas City, Missouri*, in which the Eighth Circuit Court of Appeals found, under a summary judgment standard, that the defendant school district did not have actual notice because there were no reports of suspected sexual contact between the teacher and student, only rumors and a single allegation of sexual abuse of a different student nearly twenty years before. 265 F.3d 653, 659 (8th Cir. 2001). Second, MISD cites *Bostic v. Smyrna School District*, in which the Third Circuit Court of Appeals affirmed, when considering a challenged jury instruction, that actual notice required a higher standard of notice than "information sufficient to alert the principal to the possibility that a teacher was involved in a sexual relationship with a student." 418 F.3d 355, 360 (3d Cir. 2005). MISD argues, using these nonbinding cases, that the allegations in Plaintiffs' Original Complaint do not satisfy an actual notice standard, that the prior allegations show that Plaintiffs falsified the Amended Complaint's allegations, and that the Amended Complaint's allegations are only conclusory. ECF No. 25 at 15–

16. As previously stated, the undersigned declines to reject allegations in an amended complaint based on an original complaint, as the original complaint has no legal force after amendment. *See supra* Part I.

Contrary to MISD's arguments, Plaintiff respond that their Amended Complaint alleged actual notice on the part of MISD at two points. ECF No. 28 at 8. First, the complaint alleged that John Doe's mother reported Williams's sexual misconduct with her son to the principal of Cedar Timbers Intermediate School, and the principal reported her complaint to the Board of Trustees. ECF No. 21 at ¶ 19. Second, the complaint alleged that Plaintiff KM reported Williams's sexual assault of him to the principal of Mary Orr Intermediate School, who then reported it to MISD's Board of Trustees. *Id.* at ¶ 29–31. Plaintiffs explicitly alleged that Williams's assault on KM occurred prior to Williams's assault on CS on June 1, 2015. *Id.* at ¶ 32. Thus, in both cases, Plaintiffs alleged that a principal in MISD had actual notice of Williams's misconduct prior to a later assault and MISD did not institute corrective measures.

A principal is the sort of official the Supreme Court considers "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures. . . ." *See Gebser*, 524 U.S. 274, 291, 300 (analyzing whether the principal had actual notice); *Davis Next Friend LaShonda D.*, 526 U.S. at 679–80 (". . . a school district cannot be held liable for a teacher's sexual harassment of a student without notice to the school board (or at least to the principal) . . . ."). Plaintiffs' allegations are by no means conclusory, as they contain specific names, dates, and other details concerning the events. For purposes of considering a motion to dismiss, a court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . .'" *Yumilicious*, 819 F.3d at 174 (citing *Twombly*, 550 U.S. at 547). Taking their allegations as true, the undersigned concludes that they have stated facts plausibly showing actual

notice sufficient for a Title IX claim.

### III.   Plaintiffs have sufficiently stated a § 1983 claim against MISD for its alleged failure to discipline Williams, but not for failure to investigate or failure to train.

Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." "Students have a liberty interest in their personal safety and bodily integrity which is protected by the Due Process clause of the Fourteenth Amendment." *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596, 605 (E.D. Tex. 1998) (citing *Doe v. Taylor I.S.D.*, 15 F.3d 443, 451 (5th Cir. 1994) (en banc)). "Those rights are violated by sexual assault or abuse by a school employee." *Id*. As previously stated, both § 1983 and Title IX require plaintiffs to show that the school district or its officials acted with deliberate indifference. *Ramos*, 724 Fed. App'x at 339; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994).

Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)). An official policy is either:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] . . . or by an official to whom the [district] ha[s] delegated policy-making authority; or
> 2. A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (citing *Johnson v. Moore*,

958 F.2d 92, 94 (5th Cir. 1992)). A court must determine whether each policy or custom, identified by a plaintiff as the alleged cause of a constitutional violation, is facially constitutional or unconstitutional. *Piotrowski*, 237 F.3d. at 579. If facially constitutional, then the policy can only "support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409 (1997)). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id.* (quoting *Bd. of County Com'rs of Bryan County*, 520 U.S. at 409).

While courts in this circuit are split on the level of specificity required for pleading municipal liability claims, a number of courts follow a "common-sense approach" that requires "only minimal factual allegations . . . at the motion to dismiss stage," based on *Iqbal*'s instruction that courts draw on their judicial experience and common sense, and on the fact that, in the municipal liability context, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. . . ." *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2016 WL 8672774, at *5 (N.D. Tex. Sept. 9, 2016), *report and recommendation adopted as modified sub nom. E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017) (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–44 (S.D. Tex. 2011)).

Plaintiffs asserted three § 1983 claims based on distinct policies or customs: (1) failure to investigate Williams's misconduct; (2) failure to discipline Williams appropriately; and (3) failure to train and supervise MISD employees Kokenes, Sneed, Thurston, Alvarenga, Talley, and Waller. ECF No. 21 at ¶ 45. The undersigned will consider each claim separately, according to each element—(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights

whose "moving force" is the policy or custom—as well as (4) deliberate indifference. *Piotrowski*, 237 F.3d at 578–79.

### a.  Plaintiffs have not stated a claim against MISD for its alleged failure to investigate Williams's previous misconduct before hiring Williams full-time.

"Determining who is a policymaker is a matter of law, requiring a court to identify those 'officials whose decisions represent the official policy.'" *Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. App'x 356, 359 (5th Cir. 2014) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The parties do not dispute that the MISD School Board is a proper policymaker under § 1983. ECF No. 25 at 24; No. 28 at 15; *see also Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir. 1993) (citing Tex. Educ. Code Ann. § 23.26(b)) ("Texas law provides that the Board of Trustees is responsible for determining school policy."). Plaintiffs plausibly allege that the MISD School Board knew of Williams's history of parental complaints and disabling classroom cameras, the complaint of Williams's misconduct against John Doe, and the report of Williams's assault on KM. ECF No. 21 at ¶¶ 17, 19, 21, 31. Defendants argue only that these allegations "defy logic" because the original complaint said otherwise. ECF No. 25 at 22–23. Plaintiffs also assert in their complaint that principals Kokenes and Thurston, as well as Sneed, the Title IX Compliance Officer, are policymakers for MISD. ECF No. 21 at ¶ 49. However, Plaintiffs do not cite any facts or law in support of their conclusory assertion, and the undersigned does not find that these individuals are MISD policymakers.

While Plaintiffs are not entirely clear about the exact official policy they allege, it appears to be that the MISD School Board did not have a policy or custom of performing background checks on teachers or on Williams specifically when they hired him, particularly because MISD hired him full-time after John Doe's mother reported his sexual misconduct with an MISD student at an MISD school. ECF No. 21 at ¶¶ 18–22. The complaint may also be read to allege that the

MISD Board did have the complaint of misconduct concerning John Doe before it in 2010, but the Board did not act on it.

"The term [policy] 'often refers to formal rules and understandings,' but its meaning is not exhausted by 'fixed plans of actions to be followed under similar circumstances consistently and over time.'" *Gonzalez*, 996 F.2d at 754 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). "To the contrary, it is well established that a municipality may be held liable for 'course[s] of action tailored to a specific situation and not intended to control decisions in later situations,' provided that 'the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers.'" *Id.* (quoting *Pembaur*, 475 U.S. at 481). A single decision can constitute a policy for purposes of § 1983, but the plaintiff must show "the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered." *Chavez v. Brownsville Indep. Sch. Dist.*, 135 Fed. App'x 664, 679 (5th Cir. 2005) (quoting *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002)). Because Plaintiffs allege that the MISD School Board decided not to investigate Williams prior to hiring or to ignore the results of the investigation, they have satisfied this element, according to the motion to dismiss standard that requires "only minimal factual allegations." *E.G. by Gonzalez*, No. 1:16-CV-0068-BL, 2016 WL 8672774, at *5.

However, Plaintiffs must also show that the policy was the moving force behind the violation of their rights, that is, Williams's sexual assault of the Plaintiffs. Prior to being hired at MISD, there had been a complaint at Cedar Hill ISD that Williams was alone with a student and that he turned off cameras in his classroom. ECF No. 21 at ¶ 15. After MISD hired Williams part-time but before it hired him full-time, John Doe's mother saw and reported only that Williams was in the restroom with John Doe, which was inappropriate. *Id.* at ¶ 19. At most all that the MISD

School Board could have known at this point was that Williams had taken some inappropriate actions, none of which were sexual assault. In addition, the report concerning Joe Doe, that Williams was inappropriately in a restroom with a special needs child, is undercut by Plaintiffs' complaint's apparent admission that other employees, namely Talley, also took students to the restroom. *Id*. at ¶ 41. These scant indications do not show that MISD's hiring process was deficient or that MISD's alleged failure to investigate was the moving force behind its violation, given that the inappropriate conduct in the prior reports was significantly different from and less than Williams's very serious conduct in allegedly abusing the Plaintiffs' children. Thus Plaintiffs have failed to state a § 1983 claim on MISD's alleged failure to investigate Williams prior to his hiring and assault on the Plaintiffs. This claim should be dismissed.

  **b. Plaintiffs have stated a claim against MISD for its alleged failure to discipline Williams.**

  With regard to the first element of municipal liability, as with the previous claim, Plaintiffs plausibly allege that the MISD School Board is a policymaker and knew of Williams's assault on KM. ECF No. 21 at ¶ 31; ECF No. 25 at 24; No. 28 at 15. With regard to the second element, Plaintiffs have alleged that the School Board did not discipline Williams or terminate his employment after his assault on KS. ECF No. 21 at ¶ 32. Such a policy, derived from a single decision made by the policymaker, can satisfy the second element of municipal liability. *Chavez*, 135 Fed. App'x at 679. With regard to the third element, the decision not to discipline Williams is a policy that could be the moving force behind the violation of CS's rights, as Williams sexually assaulted CS in a similar fashion to KM after MISD decided not to fire Williams. The direct relationship between the two incidents, and MISD's alleged failure to do anything in the interim, exhibit deliberate indifference to the known or obvious consequences of allowing a child abuser to remain in the classroom. *Piotrowski*, 237 F.3d. at 579. Plaintiffs have stated a claim under

§ 1983 for failing to discipline or fire Williams.

### c. Plaintiffs have not stated a claim for MISD's alleged failure to train its employees on child abuse and child predation.

To prevail on a failure-to-train theory of municipal liability, a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the infringements of rights. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). "Proof of more than a single instance of lack of supervision causing a violation of constitutional rights is required before such lack of training can constitute deliberate indifference. Instead, the plaintiff must generally demonstrate that the municipality or supervisor had notice of a pattern of prior acts fairly similar to what ultimately transpired." *Lewis v. Pugh*, 289 Fed. App'x 767, 772 (5th Cir. 2008) (citations and quotation marks omitted) (citing *Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). The focus of an inadequate training claim is on the training program, and not on an individual officer who, though adequately trained, made a mistake or could have been better supervised or disciplined. *E.G. by Gonzalez*, No. 1:16-CV-0068-BL, 2016 WL 8672774, at *11.

In their complaint, Plaintiffs allege that two principals, Kokenes and Thurston, had notice of Williams's misconduct, and reported the misconduct to the MISD School Board. ECF No. 21 at ¶¶ 19–20, 31–32. Plaintiffs also allege that three MISD employees—Alvarenga, Talley, and Waller—made statements after Williams was arrested that they had suspicions about him. *Id*. at ¶¶ 38–41. Plaintiffs allege, as prior acts, potential misconduct against John Doe in August 2010, improper images taken of AZ during the 2010–11 school year, molestation of KM during the 2014–15 school year, and molestation of CS on June 1, 2015. *Id*. at ¶¶ 18–22, 24–26.

16

While it is not clear from the pleadings what policies MISD had in place to prevent teacher abuse of students and required reporting of sexual abuse, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. . . ." *E.G. by Gonzalez*, No. 1:16-CV-0068-BL, 2016 WL 8672774, at * 5. Nevertheless, Plaintiffs have not alleged any pattern of prior acts that would reveal a policy of lack of training. *Lewis*, 289 Fed. App'x at 772. Plaintiffs have only alleged that MISD knew of two of the prior acts, the potential misconduct against John Doe and the molestation of KM. These two acts do not suffice for a pattern, and both were reported to the school board, indicating that MISD's staff did have proper training in how to respond to such incidents. The suspicions of Alvarenga, Talley, and Waller, told only in hindsight, are not equivalent to the actual violations that would put MISD on notice that their policies might be deficient. Plaintiffs' failure-to-train claim should be dismissed.

> **d.      Plaintiffs have pleaded that the Defendants were acting under color of state law.**

MISD also argues, related to all § 1983 claims, that Plaintiffs have not pleaded that MISD's employees were acting "under color of state law" when Williams, while in his position as teacher, sexually assaulted Plaintiffs' children on school grounds, or when the public school district's principals and the school board allegedly twice ignored reports of Williams's sexual assault of MISD's students or did not adequately train their employees on identifying and responding to predatory behavior. ECF No. 25 at 19–21. MISD conclusorily asserts that Plaintiffs failed to allege sufficient facts on this element. *Id.* "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988). Plaintiffs' pleaded facts demonstrate clearly that MISD's employees were acting under color of state law during the relevant time period. *See Doe v. Beaumont I.S.D.*,

17

8 F. Supp. 2d 596, 612 (E.D. Tex. 1998) ("When a supervisor who has legal control over a teacher fails to report abuse by the teacher over whom he has control, that failure to report can be an 'act under color of state law' that can support a claim for violation of a constitutional right.") (citing *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1414 (5th Cir. 1995)). Plaintiffs' claims under 42 U.S.C. § 1983 should not be dismissed on this ground.

IV.     **Plaintiffs' claims of discrimination under Section 504 should be dismissed, as they read the statute too broadly.**

"Section 504 of the Rehabilitation Act provides that '[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 690 (5th Cir. 2017) (citing 29 U.S.C. § 794(a)). In order to make a prima facie case of discrimination under Section 504, the plaintiff must allege:

> (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of [his] handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004).

Plaintiffs argue that MISD "violated Section 504 and its regulations by discriminating against Plaintiff AZ, Plaintiff KM, and Plaintiff CS solely by reason of their disabilities by excluding them from and denying them participation in a federally funded program." ECF No. 21 at ¶ 78. Plaintiffs additionally argue that MISD discriminated against them by refusing "to modify its policies, practices, or procedures" in that it did not investigate Williams or remove him from a

position where he assaulted special-needs students. *Id.* at ¶ 79.

The undersigned agrees with the holding of a Louisiana district court that considered a similar claim from a special-needs child assaulted at a hospital:

> This argument, that physical or sexual abuse constitutes "discrimination" under Title II, is an attempt at unduly broadening the scope of the ADA [Americans with Disabilities Act]. To hold that such actions can constitute "discrimination" under Title II, would be to turn "subjected to discrimination" into a catch-all phrase that includes any and all objectionable conduct.

*Woods v. G.B. Cooley Hosp. Serv. Dist.*, CIV. A. 07-0926, 2007 WL 4812054, at *2 (W.D. La. Dec. 10, 2007). In a recent decision, this Court agreed with the *Woods* court, rejecting liability under Section 504 and Title II of the ADA for a public transit company whose driver had sexually assaulted a disabled passenger, and holding that this claim was also an attempt to unduly broaden the scope of these statutes. *Woodberry v. Dallas Area Rapid Transit*, No. 3:14-CV-03980-L, 2017 WL 840976, at *7 (N.D. Tex. Mar. 3, 2017).

MISD did not deny Plaintiffs' children access to the FALS program, the proper program for children with special needs in that district. Nor do Plaintiffs allege that their children were denied the benefits of the FALS program because of their disabilities or discriminated against by anyone in MISD on account of their disabilities. Rather, according to Plaintiffs' allegations, MISD placed the children in the proper program in compliance with Section 504, and their teacher in that program sexually abused them. These are very serious allegations. However, any potential recovery for the Plaintiffs lies with their other causes of action, not with Section 504.

## V.    Plaintiffs cannot recover punitive damages against MISD.

MISD argues that Plaintiffs' request for punitive damages should be dismissed because punitive damages are not recoverable against a government or government agency under any of Plaintiffs' causes of action. ECF No. 25 at 28. Plaintiffs do not respond to MISD's argument on

this matter in their Response to the Motion to Dismiss. *See* ECF No. 28. A plaintiff cannot recover punitive damages against a government, municipality, or government entity under Title IX, Section 504, or 42 U.S.C. § 1983. *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F. Supp. 2d 878, 889 (M.D. La. 2013) (barring punitive damages under Title IX); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (barring punitive damages under § 202 of the ADA and § 504 of the Rehabilitation Act); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (barring punitive damages under § 1983). Plaintiffs' request for punitive damages should be dismissed.

## VI.    Plaintiffs have not pleaded claims for assault and battery or intentional infliction of emotional distress against MISD.

MISD requests that this Court dismiss Plaintiffs' claims for assault and battery and intentional infliction of emotional distress against it. ECF No. 25 at 29–30. Plaintiffs do not respond to this argument in their Response. *See* ECF No. 28. The undersigned does not understand Plaintiffs' Complaint to be asserting any claims on these tort theories against MISD. In the sections of Plaintiffs' Complaint concerning assault and battery and intentional infliction of emotional distress, only Williams's name appears and Plaintiffs refer only to Williams's actions. ECF No. 21 at ¶¶ 83–90. There is no need to dismiss any claims on these causes of actions against MISD, as Plaintiffs did not plead any against them.

## CONCLUSION

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** in part and **DENY** in part Defendant Mansfield Independent School District's Motion to Dismiss Plaintiffs' Amended Complaint and Brief in Support (ECF No. 25). The undersigned recommends that Plaintiffs' claims against Defendant Mansfield Independent School District under Section 504 and 42 U.S.C. § 1983 for failure to train and failure to investigate

be **DISMISSED without prejudice**, but does not recommend dismissal of Plaintiff's claims under Title IX or 42 U.S.C. § 1983 for failure to discipline.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed July 5, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE