# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | § | |
|---|---|---|
| **DARLA STRANGE, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00101-O |
| | § | |
| **MANSFIELD INDEPENDENT SCHOOL DISTRICT, et al.,** | § | |
| | § | |
| Defendants. | § | |

## ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge made findings, conclusions, and a recommendation ("FCR") in this case. July 5, 2018 FCR, ECF No. 34. Plaintiffs timely filed objections, ECF No. 35, on July 19, 2018. Defendant Mansfield Independent School District ("MISD") responded to Plaintiffs' objections on July 23, 2018. MISD Resp. Pls.' Obj., ECF No. 36.

The Court conducts a *de novo* review of those portions of the FCR to which a party objects. Anything that Plaintiffs did not specifically object to is subject to plain error review. For the following reasons, Plaintiffs' objections are **OVERRULED**, the FCR (ECF No. 34) is **ADOPTED** as the findings and conclusions of the Court, and MISD's motion to dismiss (ECF No. 25) is **GRANTED in part and DENIED in part**.

## I. FACTUAL BACKGROUND

The following facts are taken from the Magistrate Judge's FCR (ECF No. 34) unless otherwise noted.[1] This case concerns alleged violations of Title IX, Section 504 of the

---
[1] No party objects to the Magistrate Judge's factual recitation.

1

Rehabilitation Act of 1973, and 42 U.S.C. § 1983 against Defendants MISD and Kelly Dan Williams ("Williams"), as well as claims for assault and battery against Williams, related to child sexual abuse by Williams while employed as a teacher by MISD. Plaintiffs Darla Strange and Tim Strange, the parents of minor child CS; Tisha Zuniga, the parent of minor child AZ; and Michelle Miller, the parent of minor child KM, bring this action individually and as next friends of their children.

MISD hired Williams in 2010 to be a teacher in MISD's Functional Academics Life Skills ("FALS") program. ECF No. 21 ¶ 14. FALS is a program for "students who demonstrate significant cognitive disabilities and require an alternate curriculum." *Id.* Prior to being hired by MISD, Williams worked at Cedar Hill ISD, where a parent of a third-grade special-needs student reported him to the Cedar Hill administration for spending excessive time alone with that student, as well as not turning on surveillance cameras in the classroom. *Id.* ¶ 15. These reports were in Williams's employment file at Cedar Hill ISD. *Id.* Plaintiffs allege, based on information and belief, and pursuant to MISD policy, that these reports were known to MISD's Board of Trustees when it hired Williams. *Id.* ¶ 17. Williams first worked for MISD as a substitute teacher during the 2009–10 school year. *Id.* ¶ 18.

During that school year, the parents of an unnamed student ("John Doe") contacted MISD about Williams's sexual misconduct with their son while Williams worked as a substitute teacher at Cross Timbers Intermediate School. *Id.* John Doe was a participant in MISD's FALS program. *Id.* John Doe's mother saw Williams and her son exit a restroom together at the Rock Gym, a facility owned by MISD. *Id.* at ¶ 19. John Doe's mother reported the misconduct to Cross Timbers Intermediate School's principal, Gerald Kokenes, and she requested that the school district investigate and take action. *Id.* Kokenes then reported the complaint to the Board of Trustees,

directly or indirectly. *Id.* Kokenes also sent an email on June 9, 2010, to the MISD Title IX compliance officer. *Id.* at ¶ 20. However, the email only stated that John Doe's family was uncomfortable with Williams, and did not include any concerns about sexual misconduct. *Id.* MISD responded by changing Williams's duties so that he would not have contact with John Doe. *Id.* ¶ 21.

MISD hired Williams as a full-time teacher in the FALS program. *Id.* The MISD Board of Trustees allegedly made the ultimate hiring decision, and according to Plaintiffs' allegations, MISD policy required the Board to conduct a background check that would have revealed Williams's prior misconduct at Cedar Hill ISD. *Id.* Williams had taken pornographic images of John Doe on school property during February, April, and May, 2010, and shared those images over the internet, but Plaintiffs do not allege that MISD was aware of these criminal actions. *Id.* ¶ 22. MISD assigned Williams to work at Della Icenhower Intermediate Middle School for the 2010–11 school year. *Id.* ¶ 24.

While on this assignment, Williams took pornographic photographs of Plaintiff AZ, an autistic and completely nonverbal eleven-year-old boy who was part of the FALS program. *Id.* ¶¶ 25–26. The investigation of Williams's 2015 molestation of Plaintiff CS revealed the existence of these photographs. *Id.* ¶ 26. MISD assigned Williams to work at Mary Orr Intermediate Middle School for the 2014–15 school year. *Id.* ¶ 27. Plaintiffs CS and KM, both eleven-year-old autistic boys, were students in Williams's class and part of the FALS program. *Id.* ¶ 28. At some point during this school year, before June 1, 2015, Williams sexually assaulted KM in a restroom at Mary Orr Intermediate Middle School. *Id.* at ¶ 29. KM ran to Principal Duane Thurston's office and told Thurston that Williams had sexually assaulted him. *Id.* at ¶ 31. Plaintiffs allege, according

to information and belief, and pursuant to MISD policy, that Thurston reported KM's complaint to the MISD Board of Trustees. *Id.*

On June 1, 2015, MISD employee Lorena Alvarenga ("Alvarenga") discovered Williams performing oral sex on CS, an eleven-year-old autistic boy with very limited verbal capabilities in a restroom at Mary Orr Intermediate Middle School. *Id.* ¶¶ 33, 39. In the ensuing investigation, law enforcement personnel found a large number of pornographic images and videos of children, including depictions of Williams engaged in sexual acts with young boys on his computers and electronic storage hardware. *Id.* ¶ 34. Law enforcement personnel also discovered that Williams had committed multiple prior acts of sexual assault against students in MISD's FALS program. *Id.* ¶ 36.

Plaintiffs assert that MISD failed to train its employees how to recognize signs of sexual abuse in children, particularly those with learning disabilities, and predatory behavior in adults. *Id.* Two weeks before witnessing Williams abusing CS, Alvarenga saw Williams in a bathroom stall with CS, according to her statement to law enforcement officers. *Id.* ¶ 39. Another employee of MISD, Patricia Talley ("Talley"), noticed that Williams would allow CS to come behind Williams's desk and play with CS's hair. *Id.* ¶ 40. Talley also noticed that Williams took longer when taking CS and another student to the restroom. *Id.* A third MISD employee, DeRhonda Waller ("Waller"), said that this other student would come back from the restroom "upset and aggravated so he would act out by screaming and crying." *Id.* ¶ 41.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed this suit on February 8, 2018, bringing claims against MISD: (1) under 42 U.S.C. § 1983 for failure to investigate, train, and discipline Williams and other employees; (2)

under Section 504 of the Rehabilitation Act for discriminating against their disabled children; and (3) under Title IX for deliberate indifference. *See generally* Am. Compl., ECF No. 21.

MISD moved to dismiss all the claims against it. MISD Mot. Dismiss, ECF No. 25. The Magistrate Judge's FCR recommended, in relevant part, that the Court grant MISD's motion to dismiss Plaintiff's Section 504 claims. FCR 18–19, ECF No. 34. Plaintiffs objected, arguing that while the Magistrate Judge applied the correct standard to Plaintiffs' Section 504 claim, he erred by finding that Plaintiffs had not sufficiently alleged facts as to the third element—that the Plaintiffs are qualified handicapped persons that were denied benefits from a federal program because of their handicap. Pls.' Obj. 2, ECF No. 35. MISD responded that the Magistrate Judge correctly applied the 5th Circuit's standard in *Melton* to this claim and Plaintiffs seek an extension of that standard to comport with *Gaudino*, a case from the Middle District of Pennsylvania that is not controlling. MISD Resp. Pls.' Obj. 2, ECF No. 36 (citing *Gaudino v. Stroudsburg Area Sch. Dist.*, 3:CV-12-2159, 2013 WL 3863955, at *6 (M.D. Pa. July 23, 2013). The Court will analyze the objection below.

### III. ANALYSIS OF OBJECTION

The Court reviews *de novo* the Magistrate Judge's finding that the Court should grant MISD's motion to dismiss on Plaintiff's Section 504 claim. The Fifth Circuit in *Melton* set forth the standard to establish a prima facie case of discrimination under Section 504. *See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004). Under *Melton*, the plaintiff must allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of his handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under

such program or activity. *Id.* The Magistrate Judge found that Plaintiffs could not state a Section 504 claim because Defendant Williams' alleged actions fall outside the scope of the type of "discrimination" that the Act was enacted to address. FCR 18–19, ECF No. 34. He noted that two other district courts in this circuit have cautioned against reading Section 504 too broadly because the Title II definition of discrimination does not typically apply to instances of physical or sexual abuse. *Id.* at 19 (citing *Woods v. G.B. Cooley Hosp. Serv. Dist.*, CIV. A. 07-0926, 2007 WL 4812054, at *2 (W.D. La. Dec. 10, 2007); *Woodberry v. Dallas Area Rapid Transit*, No. 3:14-CV-03980-L, 2017 WL 840976, at *7 (N.D. Tex. Mar. 3, 2017)).

Here, the Court, on *de novo* review of the applicable law, agrees with the Magistrate Judge's (and other judges in this circuit) legal conclusions about the scope of Section 504. Plaintiffs' allegations in the amended complaint do not state a claim for relief under the statute. MISD did not exclude or deny benefits to Plaintiffs' children in this case. Rather, MISD placed the children in the FALS program. Am. Compl. ¶¶ 25, 28, ECF No. 21. What allegedly occurred—Williams' physical and sexual assault of the children—is jarring, but Plaintiffs' amended complaint does not state facts that would lead the Court to reasonably infer that MISD subjected the children to discrimination because they were disabled. *See Woods*, 2007 WL 4812054, at *2 (finding that recognizing "intentional tortious conduct" committed by a defendant as falling within the scope of Section 504 would result in "unduly broadening the scope of the ADA.").

Plaintiffs direct the Court to *Gaudino* to support their argument that intentional acts of abuse may create a plausible claim of discrimination under Section 504. Pls.' Obj. 4, ECF No. 35 (citing *Gaudino v. Stroudsburg Area Sch. Dist.*, 3:CV-12-2159, 2013 WL 3863955, at *6 (M.D. Pa. July 23, 2013). As an initial matter, the Court notes that *Gaudino* is not controlling here and does not align with the Fifth Circuit's general direction to read statutory language narrowly. *See,*

*e.g., In re Hickman*, 260 F.3d 400, 403 (5th Cir. 2001) (endorsing *noscitur a soccis* principle of statutory construction where courts apply canon to "avoid the giving of unintended breadth to the Acts of Congress."). Further, the court in *Gaudino* did not articulate its reasoning for finding the allegations of assault sufficient to allege the third element of the plaintiff's Section 504 claim. Instead, the *Gaudino* court analyzed the first two elements of plaintiff's claim and then, seemingly giving plaintiff the benefit of the doubt, found that he had stated a plausible claim. 2013 WL 3863955, at *6. Here, as the Magistrate Judge noted, Plaintiffs' relief lies with their other causes of action that survived the motion to dismiss, not with Section 504. *Cf. Woodberry*, 2017 WL 840976, at *7; *Ball v. St. Mary's Residential Training Sch.*, 2015 WL 3448470, at *1–3 (W.D. La. May 28, 2015). For those reasons, the Court finds that Plaintiffs' objection to the FCR should be **OVERRULED**.

### IV. CONCLUSION

For the reasons stated above, Plaintiffs' objection is **OVERRULED**, the FCR (ECF No. 34) is **ADOPTED** as the findings and conclusions of the Court, and MISD's motion to dismiss (ECF No. 25) is **GRANTED in part and DENIED in part**.

**SO ORDERED** on this **17th day** of **August, 2018**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE